IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| LEWIS KEY, JR., a.k.a. : | |
| Samuel Lewis Key, Jr. : | |
| : | |
| Plaintiff, : | |
| vs. : | CASE NO: 5:13-CV-0134-MTT-MSH |
| : | 42 U.S.C. § 1983 |
| William Curry, *et. al.* : | |
| : | |
| Defendants. : | |

## **REPORT & RECOMMENDATION**

Presently pending before the Court are Defendants' motions to dismiss (ECF Nos. 12, 16) and Plaintiff's motion to amend his complaint (ECF No. 22). For the reasons explained below, Defendants' motions should be granted and Plaintiff's motion to amend should be denied as futile.

## **BACKGROUND**

The present action arises out of the medical care provided to Plaintiff while at River Willows Nursing Center ("River Willows"). According to the Complaint, Plaintiff (a disabled prisoner previously confined at Johnson State Prison) was transferred to River Willows "on a medical reprieve" in February of 2011. (Compl. 10.) During the transfer, Plaintiff was apparently "thrown from his wheelchair" and his left leg was badly scratched by the grill on the inside of the transport van. (*Id.*)

Plaintiff's injury was reported upon his arrival at River Willows, and he was given a band-aid. Plaintiff's "scratch" later became swollen and painful. (*Id.*) Plaintiff

complained multiple times and received medical treatment. (*Id.* at 11.) However, for months, physicians at River Willows refused to refer Plaintiff to an outside specialist. (*Id.*) Plaintiff's injury was observed by a "V.A. Representative," who then allegedly took steps to have Plaintiff's leg examined by a doctor at the Dublin V.A. Medical Center. (Compl. 11-12.)

Plaintiff was taken to the hospital a week later, and physicians there advised Plaintiff that he had contracted a "M.R.S.A." infection. (Compl. 12.) Medication for the staph infection was prescribed, and the prescription was faxed to River Willows. (*Id.*) The staff at River Willows allegedly failed to fill the prescription, however, and Plaintiff had to make an appointment to return to the V.A. Medical Center to obtain medication. (*Id.*) River Willows staff physicians, including Dr. Cravey, also allegedly refused to follow the course of treatment ordered by doctors at the V.A. (*Id.*) Thus, after some period of time, Plaintiff again contacted the V.A. for medical treatment, and "[a]fter [several] MRI's and bone scans, Plaintiff was told that [his] leg had set-up 'gang-green' and would have to come off or it would 'kill' Plaintiff in a short time." (Compl. 13.)

When Plaintiff returned from the hospital, he began writing attorneys, presumably about a possible lawsuit against River Willows. (*Id.* at 14.) Plaintiff alleges that River Willows staff then began interfering with his mail and kept copies of letters Plaintiff wrote to his attorney. Plaintiff also filed grievances regarding his medical care and complained about the interference with his mail to the facility director, Defendant Bryan Hart. (*Id.*) The day after Plaintiff complained to Hart, parole officer William Currey and social worker Linda "Doe" allegedly threatened to send Plaintiff back to Johnson State Prison if

he "kept making problems for River Willows[.]" (*Id.*)

Plaintiff's attorney then called River Willows to schedule a visit with Plaintiff. (Compl. 15.) The next day, Defendants Currey and Doe put Plaintiff on "room restriction." (*Id.* at 15-16.) Currey then allegedly warned Plaintiff that if he spoke with an attorney, it would be "from Jackson State Prison" and that he would throw out Plaintiff's legal papers. (*Id.* at 16.) Plaintiff was later transferred back to state prison for "failing to carry out instructions" from Currey. (*Id.*)

Plaintiff filed the present civil rights lawsuit against multiple Defendants: After a preliminary review of Plaintiff's Complaint, only the claims against Dr. Michelle Cravey, Linda "Doe", who has been identified as Linda Adams, and parole officer William Currey were allowed to proceed. (Order 2, July 16, 2013, ECF No. 9.) Defendants Cravey and Adams move to dismiss Plaintiff's Complaint claiming that they are not state actors liable under 42 U.S.C. § 1983. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 5-8, ECF No. 13.) Likewise, Defendant Curry moves to dismiss claiming that Plaintiff failed to exhaust his administrative remedies, has abused the judicial process, fails to state a claim, and because Defendant Curry is entitled to immunity. (Def. Curry's Mot. to Dismiss 1, ECF No. 16.) Plaintiff filed a response to Defendant Cravey and Adams' motion to dismiss on September 27, 2013. Therein he claims that Defendants Cravey and Adams were "de facto prison officials" keeping him essentially incarcerated at the nursing home (Pl.'s Resp. to Defs.' Mots. to Dismiss ¶ 13, ECF No. 20.) Plaintiff failed to respond to Defendant Curry's motion to dismiss and instead filed a motion to amend his complaint (ECF No. 22). Defendants' motions to dismiss and Plaintiff's motion to amend are ripe

3

for review.

## DISCUSSION

I.  **Defendants Adams and Cravey's Motion to Dismiss**

    A.    <u>Standard of Review</u>

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

    B.    <u>Analysis of Cravey and Adams' Motion to Dismiss</u>

Defendants Cravey and Adams claim that Plaintiff has failed to state a claim against them because they are not state actors subject to liability under 42 U.S.C. § 1983. The Court agrees. Consequently, for the reasons explained below, Defendants' motion to

dismiss should be granted.

A claim under section 1983 requires a showing of "(1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005). "Private conduct may be fairly attributable to the state where: (1) the deprivation [was] caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the state is responsible, and (2) the party charged with the deprivation . . . may fairly be said to be a state actor." *Cohen v. World Omni Fin. Corp.*, 457 F. App'x 822, 828 (11th Cir. 2012) (internal quotation marks and citation omitted) (alterations in original). The Eleventh Circuit uses three tests to determine whether a defendant is a state actor: "(1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test." *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993).

"The public function test limits state action to instances where private actors are performing functions traditionally the exclusive prerogative of the state." *Id.* (internal quotation marks and citation omitted). "[A] mere showing that a private person performs a public function is not enough to establish state action." *Langston v. ACT*, 890 F.2d 380, 384 (11th Cir. 1989). "The state compulsion test limits state action to instances where the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *Cohen*, 457 F. App'x at 829 (internal quotation marks and citation omitted). The state must have exercised such "coercive power or [have] provided such significant encouragement, either overt or covert, that the private actor's choice must be

5

deemed to be that of the state." *Langston*, 890 F.2d at 385. Finally, for the nexus/joint-action test to be met, the state must have "intertwined itself with the private actor to such an extent that the state was a joint participant in the enterprise." *Id.*

Plaintiff failed to allege any facts in his Complaint which would show that Defendants Cravey or Adams are state actors. To the contrary, Plaintiff alleges that Defendant Cravey is "employed as medical service provider physician at River Willows Nursing Center," and that Adams is "employed as social worker at River Willows Nursing Center[.]" (Compl. 8.) Plaintiff describes River Willows as a "medical service provider for the Plaintiff." (Compl. 9.) He further admits that he was transported to River Willows on a "medical reprieve" from Johnson State Prison. (Compl. 10.) Plaintiff has not alleged that either Defendant was performing functions that are traditionally within the exclusive prerogative of the state, that the state coerced or encouraged the Defendants to violate his Constitutional rights, or that the state has so intertwined itself with Defendants' actions that the state was a joint participant in the alleged Constitutional violations.

In response to Defendants' motion to dismiss,[1] Plaintiff claims that Defendants are state actors because: (1) he was at River Willows under a supervised release order, so he was still in custody (Pl.'s Resp. to Defs.' Mots. to Dismiss ¶ 4); (2) that he was not allowed to come and go from River Willows at will or allowed to change his medical providers (*Id.* ¶ 8); (3) that in order to be granted medical leave from prison, he agreed to a "Structured

---

[1] The Court notes that Plaintiff's response was untimely filed. However, because Plaintiff is proceeding *pro se* and may have been confused as to which motion he was given an extension of time to file a response to, the Court shall consider the arguments made in his untimely response. (*See* Text-only Order, Sept. 6, 2013.)

Home Confinement" which provided that Plaintiff "will remain at [River Willows] at all times unless authorized to leave by my parole officer," (*Id.* ¶ 9.); (4) that summarily because he had to have permission from his parole officer to leave, Defendants Adams and Cravey were *de facto* parole officers or GDOC employees (*Id.* ¶¶ 10-12); and (5) that if a parolee left River Willows without permission, Defendant Adams or another employee would contact law enforcement (*Id.* ¶ 13). These facts do not show that either Defendant Adams or Cravey were state actors. Instead, they show that Plaintiff was still under some form of agreed-to confinement while at River Willows, under the supervision of a parole officer. Plaintiff's parole officer is clearly a state actor, but that does not make the employees of River Willows state actors. Since Plaintiff has failed to allege any facts that show that Defendants Adams or Cravey are state actors, Defendants' motion to dismiss should be granted and Plaintiff's Complaint dismissed as to these Defendants.

## II.     Defendant Curry's Motion to Dismiss

Plaintiff makes the following claims against Defendant Curry: denial of access to his attorneys and legal documents, threats to take him back to prison, keeping Plaintiff's legal documents after returning Plaintiff to Jackson State Prison, and revoking Plaintiff's medical parole. He claims that all of these actions violate the Fourteenth Amendment. (Compl. 16, 21-22.) Defendant Curry has construed these allegations as making claims for confiscation of legal paperwork, denial of access to courts, First Amendment retaliation, improper revocation of probation, and for various state law claims.[2]

---

[2] The Court does not construe Plaintiff's complaint as stating any state law claims. However, to the extent that any state law claims may possibly be construed from Plaintiff's Complaint, the

Defendant Curry moves to dismiss Plaintiff's Complaint claiming failure to exhaust, failure to state a claim, and immunity. For the reasons explained below, the Court agrees that Defendant Curry's motion to dismiss should be granted.

> A.  Failure to Exhaust—Plaintiff's claim that Defendant Curry kept his legal paperwork

Title 42, United States Code section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (internal quotation marks and citation omitted). The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]"). Furthermore, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings. *Id.* at 1376.

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the

---

Court should decline to exercise jurisdiction over those claims since it is recommended that all of Plaintiff's federal claims be dismissed.  *See* 28 U.S.C. § 1367(c)(3).

8

plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.* If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id.* "If the complaint is not subject to dismissal at the first step . . . , the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *Id.*

Defendant moves to dismiss Plaintiff's claims that Defendant Curry kept Plaintiff's legal paperwork for lack of exhaustion claiming that Georgia Diagnostic and Classification Prison ("GDCP")[3] had a grievance procedure in place, but that Plaintiff failed to utilize this procedure. (Def. Curry's Br. in Supp. of Mot. to Dismiss. 5-8, ECF No. 16-1.) Plaintiff admits in his Complaint that he never filed any grievance concerning any of his claims in the Complaint, but states that this is because he could only grieve "problems which arise from an inmate's custody in prison." (Compl. 2, 6.) Plaintiff failed to respond to Defendant Curry's motion to dismiss, so there are no further allegations by the Plaintiff to consider or to take as being true. It is clear from Plaintiff's own allegations that this claim concerns actions that occurred after he was returned to prison—i.e., that Defendant Curry kept Plaintiff's legal papers once Plaintiff was taken to GDCP. (Compl. 22.) There were grievance procedures in place that Plaintiff could have taken advantage of once at GDCP, but Plaintiff admits that he did not file any grievances concerning the

---

[3] Plaintiff asserts in his Complaint that he was sent back to "Jackson State Prison" from River Willows. Plaintiff's movement history, however, reflects that prior to being at River Willows, Plaintiff was housed at Johnson State Prison. After his medical reprieve, he was sent to GDCP which is in Jackson, Georgia. (Def. Curry's Ex. A-1, ECF No. 16-3.)

9

claims in his Complaint. (Compl. 2, 6.) Because Plaintiff admits that he failed to exhaust his administrative remedies, Defendant's motion to dismiss regarding this claim should be granted. *Turner*, 541 F.3d at 1082.

Furthermore, even assuming that Plaintiff did create a question of fact as to whether his claim should be dismissed for failure to exhaust, it is clear from the evidence presented by Defendant that Plaintiff's claim should be dismissed. At the second step in the exhaustion inquiry, the Court makes factual findings relating to exhaustion. A defendant bears the burden of establishing a lack of exhaustion. *Turner*, 541 F.3d at 1082-83. The Defendant here has met that burden.

Defendant has established that GDCP uses the Georgia Department of Corrections' Standard Operating Procedures (SOP) regarding grievances. (Caldwell Aff. ¶¶ 4, 6 & Ex. A-3, Aug. 14, 2013, ECF No. 16-2.) The SOP mandates that an inmate must follow a three-step process in order to exhaust his remedies: file an informal grievance, file a formal grievance, and file an appeal. (*Id.* ¶¶ 6-18, Ex. A-3 at 5-9.) "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules[.]" *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted). Thus, in order for Plaintiff to have exhausted his administrative remedies, he needed to have filed an informal grievance, formal grievance, and appeal concerning his claim that Defendant Curry took his legal documents prior to filing this action. *See, e.g., Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) ("[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance

and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." (emphasis added)).

Plaintiff filed no grievances while at GDCP from June 2012 through August 2012. (Caldwell Aff. ¶¶ 25-26.)  It is thus clear from the evidence that Plaintiff did not exhaust his administrative remedies prior to filing this action.  Plaintiff did not follow the grievance procedure and file an informal grievance, formal grievance, or appeal.  He failed to exhaust his administrative remedies regarding his claim that Defendant Curry kept his legal paperwork.  Consequently, Defendant's motion seeking dismissal for failure to exhaust this claim should be granted.

B.     Failure to State a Claim

Defendant Curry argues that two of Plaintiff's claims should be dismissed under Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim.  Specifically, he contends that Plaintiff has failed to state a claim for access to courts and for retaliation in violation of the First Amendment.  (Def. Curry's Br. in Supp. of Mot. to Dismiss. 8-11.) The Court agrees and recommends granting Defendant's motion to dismiss for these two claims.

As explained above, when considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

    1.    *Access to Courts*

"It is . . . established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right is "grounded in several constitutional amendments, including the First, Fifth and Fourteenth Amendments." *Dennis v. Schwarzauer*, 496 F. App'x 958, 959 (11th Cir. 2012). "To assert an access-to-the-courts claim, the plaintiff must possess a non-frivolous, arguable underlying cause of action, the presentation of which was prevented by the defendant." *Id.* Thus, "[i]n order to establish a violation of the right of access to the courts . . . a prisoner must show an actual injury." *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1271 (11th Cir. 2010). "To state an actual injury, the plaintiff must allege that he had a cause of action that he could not vindicate because of the defendant's actions, and he must describe that underlying cause of action in his complaint." *Bryant v. Ruvin,* 477 F. App'x 605, 607 (11th Cir. 2012).

Plaintiff has not alleged that he had a non-frivolous cause of action which he was

actually unable to pursue because of Defendant Curry's actions. As best the Court can tell, Plaintiff was contacting attorneys while at River Willows in order to pursue a claim against River Willows for what Plaintiff contends was insufficient medical treatment. (Compl. 15.) Defendant Curry allegedly stopped an attorney from seeing Plaintiff at River Willows by putting Plaintiff on room restriction. (*Id.* at 15-16.) Plaintiff also states that Defendant Curry took Plaintiff's legal documents and told Plaintiff that if he wanted to see an attorney he would have to do so from Jackson State Prison. (Compl. 21-22.) Taking these allegations as true, Plaintiff has failed to state a claim for access to courts because he has not alleged any injury that resulted from Defendant Curry's actions. Consequently, Defendant's motion to dismiss regarding Plaintiff's access to courts claim should be granted.

        2.     *Retaliation*

In order to show a First Amendment retaliation claim, a plaintiff must allege "that: (1) his speech was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there was a causal relationship between the retaliatory action and the adverse effect on speech." *Burns v. Warden, USP Beaumont*, 482 F. App'x 414, 416-17 (11th Cir. 2012) (citation omitted). "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment Rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). "To establish causation, the plaintiff must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights." *Id.* at 417. Additionally, "an inmate cannot state a claim of

retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process." *O'Bryant v. Finch*, 637 F.2d 1207, 1215 (11th Cir. 2011).

It is entirely unclear from Plaintiff's Complaint that he is attempting to state a claim for retaliation. Plaintiff alleges that he wrote letters to private attorneys and wrote grievances about the medical care he was receiving at River Willows; that Defendant Curry confiscated these documents and told Plaintiff that he was causing problems; and that Defendant Curry thereafter charged Plaintiff with failure to carry out parole officer instructions, resulting in the revocation of Plaintiff's medical reprieve. (Compl. 15, 16, 21.) Even assuming that Plaintiff has alleged that he engaged in constitutionally protected speech, which the Court specifically does not find, Plaintiff has failed to allege any facts which show an adverse effect or causation. Furthermore, Plaintiff admits that he was found in violation of the conditions of his parole as stated by Defendant Curry and that his parole was revoked. (Compl. 17, 21-22; *see also* Def. Curry's Br. in Supp. of Mot. to Dismiss. Ex. B.[4]) Plaintiff cannot state a claim for retaliation due to Defendant Curry's charge with the parole board because Plaintiff was "found guilty of the actual behavior underlying that charge after being afforded adequate due process." *O'Bryant*, 637 F.2d at

---

[4] Exhibit B is a copy of the State Board of Pardons and Paroles Waiver of Final Hearing in which Plaintiff was advised of his rights, but admitted to violating the terms of his release. Plaintiff admitted to failing to carry out instructions from his parole officer and to committing the offense of terroristic threats and acts. This document was incorporated by reference into Plaintiff's Complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (In determining a Rule 12(b)(6) motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

1215. Defendant's motion to dismiss regarding Plaintiff's claim of retaliation should therefore be granted.

### C.   Immunity

Finally, Defendant Curry claims that he is entitled to quasi-judicial immunity to the extent that Plaintiff is attempting to bring a claim for improper revocation of his parole. (Def. Curry's Br. in Supp. of Mot. to Dismiss 11-13.)  Plaintiff has not made any allegations which would support an interpretation of his Complaint as stating such a claim. However, to the extent that Plaintiff was attempting to make a claim for improper revocation under § 1983, such a claim "fails because, under *Heck v. Humphrey*, a state prisoner cannot 'seek[] damages in a § 1983 suit' when judgment in his favor 'would necessarily imply the validity of the conviction or sentence.'"  *Rolle v. Raysor*, 267 F. App'x 925, 926 (11th Cir. 2008) (quoting *Heck*, 512 U.S. 477, 487 (1994)) (alteration in original).  Furthermore, the Eleventh Circuit has found probation officers to be immune from a suit for improper revocation.  *Id.*  Consequently, Defendant Curry's motion to dismiss Plaintiff's claim for improper revocation should be granted.

### III.   Motion to Amend

Plaintiff filed a motion to amend his complaint under Federal Rule of Civil Procedure Rule 15[5] to add the two "John Doe" Johnson State Prison officers who transported Plaintiff from Johnson State Prison to River Willows Nursing Home on February 8, 2011.  (*See* Am. Compl. 1, ECF No. 22-1.)  He claims that these officers

---

[5] Plaintiff must seek leave of court to amend his complaint under Rule 15(a)(2) because neither of the requirements for an amendment as of course are met here.

subjected him to cruel and unusual punishment when they refused to follow the Americans With Disabilities Act and the Georgia Department of Correction procedures when transporting a person in a wheelchair.  (*Id.*)  Plaintiff would also like to rename as defendants Gil Harrington, Dr. Kim White, Jane Doe, and Bryan Hart, who are all employees of River Willows (hereinafter "River Willow Defendants"), claiming that they were deliberately indifferent to his serious medical needs.  (*Id.* 2-5.)  He does not make any specific factual allegations against the River Willow Defendants, but merely states in a conclusory fashion that each defendant failed to "stop subordinate staff" from "acting unlawfully" when each defendant had the authority to do so.  (Am. Compl. ¶¶ 2-5.)

Here, Plaintiff's motions to amend should be denied because his amendments would be futile.  *See, e.g., Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) ("[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.")  Plaintiff's Amended Complaint contains the same deficiencies explained to him in the Order and Report and Recommendation issued on June 17, 2013 (ECF No. 5), and the subsequent Order adopting the Report and Recommendation issued on July 16, 2013 (ECF No. 9).  Specifically, Plaintiff has failed to sufficiently identify the Johnson State Prison officers such that an action can be maintained against them.  *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (explaining that fictitious party pleading is not generally allowed in federal court unless the description of the defendant is so specific that service could be made on the individual).[6]

---

[6] Furthermore, it is clear from the face of Plaintiff's Amended Complaint that an action against these two officers for cruel and unusual punishment would be barred by the applicable two-year

Plaintiff's claims against the River Willows Defendants are likewise deficient because Plaintiff is suing each River Willows Defendant in his or her capacity as supervisor, but has not alleged any fact to show that the Defendants personally participated in any constitutional violation or that "there is a causal connection between [the] actions of the supervising official and the alleged constitutional violation." *See, e.g., Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (internal quotation marks and citations omitted). Plaintiff has consequently failed to state a claim in his Amended Complaint against the Johnson State Prison officers or the River Willows Defendants and his motion to amend should be denied as futile.

## CONCLUSION

For the reasons explained above, Defendants' motions to dismiss (ECF Nos. 12, 16) should be granted and Plaintiff's motion to amend (ECF No. 22) should be denied. Under 28 U.S.C. § 636(b)(1), the parties may file objections to this Recommendation in writing with the United States District Judge within fourteen (14) days after being served with a copy hereof.

SO RECOMMENDED, this 26th day of February, 2014.

S/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE

---

statute of limitations, even if the Amended Complaint relates back to Plaintiff's original Complaint. *See Bell v. Metro. Atlanta Rapid Transit Auth.*, 521 F. App'x 862, 865 (11th Cir. 2013) ("The forum state's statute of limitations for personal injury actions applies to § 1983 claims, which in Georgia is two years."). Plaintiff states that he was injured by the Johnson State Prison officers' failure to comply with regulations regarding wheelchair restraint during transport on February 8, 2011. Plaintiff did not sign his Compliant until February 12, 2013 (Compl. 25), and the Complaint was not mailed until March 26, 2013 (Compl. Envelope, ECF No. 1-3).

17